We are now going to move to Appeal No. 24-1381, Barbara Lukaszczyk v. Cook County, Illinois. And we're going to begin with oral argument, Mr. Lubin, from you. May it please the Court. Good morning, Councils. I'd like to start just by discussing the response a little bit. The response focuses, I think over-focuses, on a dichotomy that it kind of creates between facial challenges on one hand and as-applied challenges on the other hand. Mr. Lubin, I'm sorry to interrupt you at the beginning. That's not what you want to have happen. And I want you to keep your thought. Can you just answer one question? Do we have a live case or controversy here? In other words, is the vaccine policy that's the subject matter of the litigation in Cook County, is that policy still in effect today? I don't know that it has too much to do with the complaint. My understanding of the current policy is that facially it is exactly the same policy, but that it may be being applied a little differently. But I don't know too much about the details. Okay. I mean, Cook County is here. Is that, so your best understanding is that it is in effect? Is that what you're trying to say? In effect, the policy was announced that there's a requirement to vaccinate against COVID-19 and that there's a system for creating potential exemptions or accommodations. We know, for example, that in the wake of the pandemic, a lot of companies, a lot of government organizations have retired vaccine policies. And to the extent that this case involves a request for declaratory or injunctive relief, it would really help to know whether the policy is in effect or not. Right. So the words of the policy are still in effect. As I understand it, they may be applying the policy a little bit differently, for example. Okay. Go ahead. Go forward to where you started. Sure. No, no. Thank you very much. So anyway, I don't think there's anything in the complaint and anything in the facts which requires anybody to interpret the complaint as mounting specifically a facial challenge. And the reason for that is because if you look at the pertinent case law, whether it's Fulton, Roman Catholic Diocese of Brooklyn v. Cuomo, or Dahl, which, you know, the Sixth Circuit decision that I quote quite a bit because it's really one of the only ones that focuses on this issue and comes down my side. They don't discuss that dichotomy either. There's no language in any of those cases that says, well, if they've mounted a facial challenge, we deal with it one way. If we mounted an as-applied challenge, we deal with it another way. And, in fact, with respect to Dahl, the languages having announced a system under which student athletes can seek individualized exemptions, the university must explain why it chose not to grant any to plaintiffs. So, in other words, the fact that there's individualized exemptions creates a facial problem with the policy. And that's what I understand your position to be in the reply brief. Is your position in the reply brief that this is now an as-applied challenge? So I didn't do a phenomenal job in the complaint of distinguishing. You show up at the reply brief. Right. So I'm approaching it as an as-applied challenge. And I think the facts in the complaint spell out an as-applied challenge. In other words, what the facts in the complaint state is they have this policy which says anyone can seek an exemption. Practically what happened was anyone that sought an exemption under their religion, they were denied an exemption. When I say denied an exemption, the county says, no, the exemption was granted. But the granted exemption was you don't get to work. You don't get to make money. You have to find a remote position. By the way, there aren't any remote positions. That's not an acceptance of an accommodation. That's a denial of an accommodation as far as I'm concerned and I think as far as the law is concerned. So anyone that sought an accommodation on the basis of their religion was denied. And there were certain requests for an accommodation for medical reasons, that is, secular reasons, that were granted specifically. Let me cut you off there. I apologize. But what we have here, I want to zero in on those allegations that you just discussed, which are roughly in paragraphs 52 to 61 of the First Amendment complaint, the Second Amendment complaint, and the Third Amendment complaint. As I read the pleadings and look at the history of the case, we're here under different auspices. Last time we were all here with regard to a preliminary injunction. Now we're here with regard to a dismissal. And specifically a Rule 8 analysis as to whether under Twombly and Iqbal there's a sufficient basis for these plaintiffs to have made the claim that they did. I didn't see, though there was quite a bit of evidence that was submitted the last time with regard to the preliminary injunction. And that came in, we considered it, ultimately we ruled against your clients, but that evidence came in. I never saw any of that evidence getting into the pleadings, though. So what the pleadings state, and I think this is what is necessary to state, but what the pleadings state is that when it came to medical requests for an accommodation, they were granted, or not all of them were granted, but some of them were granted. And the one that I focus on, because the county's position is, well, if you had one vaccine, Pfizer and Moderna, and then you had a bad reaction, at least you're somewhat vaccinated, and that's better than being not vaccinated at all. But there was an employee, and I refer to it in the complaint, there was an employee who was granted a complete exemption, was allowed to come to work because he was participating in double-blind studies of vaccine efficacy. And I hear the echo of what you're saying in, for example, paragraphs 55 through 57 of the complaint. But where I think there may be a problem, and I'd like to get your thoughts on it, is under Twombly and Iqbal, there's got to be some factual content that builds out the allegations. And the difficulty, I think, that your clients face is that there isn't that factual content that was referenced before that's now being made part of the pleadings. The pleadings stayed static throughout. Instead of bringing in these things, for example, that the hectone nurses had a certain religious background, or that certain individuals had a religious problem with regard to the vaccine, we see a lot of these cases in the Title VII context as well as in the free exercise context. And there's a lot of law that our court has developed with regard to what's necessary for a pleading. I want to give you the opportunity to address that. Sure. So after, well, the paragraph that specifies, I think, what you're on is talking about is paragraph 55. So there I state that at least one individual was given a medical exemption that allowed them to remain completely unvaccinated. And so I think there, very clearly, what is alleged is a difference in treatment between people who had a religious request for an accommodation and people who had a secular request for an accommodation. To the extent that what you're talking about is we didn't get into the specific religious backgrounds of each plaintiff and why it is that each plaintiff had a religious objection to the vaccines, because, of course, they're all different. They don't all have the same one. So I didn't get into that. The court never ruled on that issue, and so the court never said you didn't spell out their religious background enough to move forward. So I didn't go back and change those pleadings right from the beginning. I think the Pasarela decision, I don't know the site off the top of my head, but the Pasarela decision that this court handed down a few months ago on Title VII addresses the concerns that I didn't spell out enough about the individualized religious backgrounds. Under that decision, all I really have to say is they have a religious exemption, or they have a request for a religious exemption. Mr. Lubin, if you win, let's suppose for a second here that we agree with you. What relief does your client want, your clients? What do they want a federal court to do? Standing on one foot, what I really think they want at this point is damages. I think we're way far down the road for them to be asking about their jobs back, and the truth of the matter is I think the county may even be willing to negotiate that, although I don't want to speak for the county. But I think at this point what they want is damages, which they're entitled to. Mr. Lubin, they're entitled to damages on an as-applied claim. Stepping back some, at the first argument we had a discussion about as-applied versus facial. We found in our opinion that you had brought a facial challenge. The district court judge here dismissed your claim on a facial challenge. In your opening blue brief, you say nothing about this being an as-applied challenge. We don't hear that until the reply brief. Why haven't you waived your argument that this is an as-applied challenge? That should have been the first thing in the blue brief. This is an as-applied challenge. Under Rule 8, what has to be pled in the complaint is the facts that create the cause of action. This is a separate question, and I'm sorry to interrupt you because I know time is short. But the question is pleading. You have not argued until your reply brief that you are pursuing an as-applied challenge. After this court, the first round, said you brought a facial challenge. After the district court dismissed your claim as a facial challenge. The district court didn't even get to the as-applied. And the first time we hear from you that this is an as-applied challenge is in your reply brief. So putting aside Rule 8, the question is why haven't you waived this by not raising the as-applied until your reply brief? Well, the reason I haven't waived it is because Rule 8 just says that I have to write down the facts that give me the claim. And the facts here that I, and the facts that I focused on in the complaint. But the appellate law and the procedural law says in order to preserve something for us to look at it, you have to raise it. And you have to raise it in your opening brief. I see that my time is done. Not only my time now, but my time for rebuttal. You may finish the answer, and I will give you time for rebuttal. Thank you so much. The answer is, and this is my understanding of Rule 8, when you look at the facts that are alleged in the complaint, it's the facts that create the claim, not any statement about what the law says. Rule 8 doesn't preserve an issue for appeal, is my point.  So moving on from Rule 8, the argument in the opening brief, and I didn't use the words as-applied. Clearly I should have done that. If I were writing it today, I would do that. I would write the words as-applied. But the arguments in the opening brief aren't as-applied arguments. The arguments in the opening brief are about how they treated people differently, not about how the rules phrasing creates a cause of action. The argument in the opening brief is how they treated people differently based upon the nature of their request for an accommodation. Those that sought an accommodation for secular reasons were treated one way, and those that sought accommodations for religious reasons were treated a different way. And that creates the claim. Thank you, Judge. Thank you, Mr. Lubin. We'll give you a couple minutes for rebuttal. Thank you so much. And now we're going to hear on behalf of the county, Mr. Breyer. Mr. Breyer, because time is short, could you start with that Rule 8 question about pleading and whether it's sufficient or not? Yeah, thank you, and may it please the Court. First of all, I would just argue, as I think Judge St. Eve was focusing on, that Rule 8 is irrelevant to the central issue on this appeal, which goes to forfeiture slash waiver. As I understand at this point, opposing counsel has expressly in his reply brief waived, with a capital W, not a forfeiture, an actual waiver, taking away the power of this Court to address any facial challenge. So I think that can be set aside entirely. Turning to forfeiture, I'm sorry, I feel like we're getting a bit gotcha'd by opposing counsel here. The District Court ruled in this matter that there was a facial challenge and said that that facial challenge was not supported by the Rule 8 pleadings in this case. There was absolutely nothing, as was just conceded in the opening brief, saying otherwise. In fact, and I quote, on page 8, they made arguments that, quote, their arguments, quote, doomed its policy, referring to the county's policy. That's a facial challenge. That's a challenge to the policy itself. But it's even worse than that. It's not just us focusing on appellate briefing. This goes all the way back to the District Court. When we move to dismiss, and I'll focus on, this is record 88, page 19, we say, and I quote, plaintiffs challenged the CCH policy on its face, end quote. Plaintiff made no response to this. Instead, they argued generally, which on its own, under this Court's decision, such as Bontay v. United States Bank, that enough is enough to forfeit that issue for not responding in their response. Instead, they said, oh, well, we believe that this Court's previous decision left open whether a complaint could survive where a preliminary injunction could not be granted. That's the way the District Court interpreted it, that there was a facial challenge, that there were no material changes between the complaints. And we emphasized that point in our reply. We said again, and this is at record 91 at, sorry, record 92 at 4, quote, plaintiffs bring a facial challenge to the constitutionality of the CCH policy and not an as-applied challenge. So if it's a facial challenge, at least as we ordinarily understand them, it would be declaratory and injunctive relief. That's correct. Which brings me to the question, is the policy in effect? My understanding is that there have been changes that had not been raised, and because it's plaintiff's obligation to establish jurisdiction, I have not been informed as to the status of this. I came in on a motion to dismiss, unfortunately. If this court would like briefing, we would request that it order supplemental briefing for plaintiff to try to establish how there is standing, how there is a live controversy for injunction of a declaratory relief. We believe that would be a brief memorandum that would be appropriate here, just to flesh that out. I don't want to do some improv here at the council podium trying to say what the current policy says or does not say, but I would emphasize that it's plaintiff's burden, as the party asserting federal jurisdiction, to show that there is currently a controversy. So I would respectfully request that if supplemental briefing be ordered, that they take the lead there and that we respond if necessary, depending on what they say. Put to the side for the moment the facial as-applied question. Rule 8's got a requirement, Iqbal Twombly. We've got plenty of case law interpreting what that should mean. We've got the key allegations, paragraph 52 through 61, and then paragraph 79, with regard to the free exercise claim, which is the last claim that remains. Is it the county's position or not that there's a problem with the manner in which this has been pleaded to make the causal chain that plaintiffs are religious, that they requested religious exemptions, that those were denied, that that was different than a medical exemption, and therefore that that's discriminatory and in violation of the First Amendment? You know, cabinet, again, that we don't believe that this was properly presented, so I'm a bit of a disadvantage in responding, but to focus on what I am aware of about the discrimination is that my understanding is that these people are supposedly treated differently, were treated differently because their circumstances were different in the accommodations that were issued. For instance, the person on the vaccine efficacy trial. That's clearly the theory. I think what Judge Brennan is asking you is you just focus on the four corners of the pleading. Is it inadequate pleading? We know the theory. I mean, the theory is clear in the brief, too. I don't believe it is, even for an as-applied, but again, I believe at this point, given how this was litigated, where it was utter silence in the district court, and then leading to a ruling where the district court, in the face of the county, repeatedly saying, we've got an as-applied challenge. This court, in the previous preliminary injunction rulings, focused on the fact that he brought in only an as-applied challenge and ignored the language of the policy being challenged, focused on that fact, how the policy as written was not discriminatory. Given all that, we have two waivers. We have a waiver in the district court by failure to respond when the county said, we are addressing this, once again, as a facial challenge. Yeah, facial, not as-applied. Right. We were focusing on facial. No response from the plaintiff saying, no, no, no, this is as-applied, and we think this is about discrimination on us in particular, not that the policy, as they said in their opening brief here, is doomed. And then the district court took the parties at their word. They're being no, you know, as district courts, as they oft will do when they're quite overburdened, if the parties aren't disputing a point, they will take it as it was presented, and here it was presented facial. Then on appeal, we are presented at the county with a brief that doesn't dispute that point. And this court's precedent, as Judge Steen pointed out, is quite clear that if a party doesn't address the district court's reasoning, you know, that was protect our parks is what we cited, but there's many cases on that front. If the appellant does not address the district court's basis for its ruling, they forfeited it. So we had it presented as the county. We were putting a response brief together where there had been no dispute in the district court. We got a ruling that focused on the lack of a dispute, saying it was a facial challenge, and then opening brief that doesn't say that the district court got it wrong. And now, you know, now we have this sort of argument for opposing counsel saying, oh, well, look at our complaint, look at Rule 8, look at what we said about it as applied. It's just too late. It's years too late. This litigation has been ongoing. I understand that there's strong feelings on this. I do not remotely dispute that. But there's an orderly presentation of arguments that litigants need to have fair opportunity to respond, and we've been denied that here. If the district court got it wrong, and the district court misapprehended that, in fact, the Second Amendment complaint was an as-applied challenge. Sorry, if? The Second Amendment complaint, in fact, was an as-applied challenge. Oh, if it got it wrong about being facial. If it got it wrong about that, and the district court's analysis got a little bit off track and started making that argument. That's based upon the presentation. It's your position, then, that plaintiffs should have redirected the district court to say, no, look at our pleadings, they are as applied, and made that argument in the district court? Yes. Yes, they should have made it there, and then again they should have made it here. There are opportunities to do that. That's how these proceedings are done. You give the other side an opportunity to say, hey, you're saying X about our case. But X is the wrong law. It's the wrong theory. You say it's a Fourth Amendment claim. We're saying it's a due process claim. That happens all the time, particularly since you don't have to lay out theories of liability in a complaint to begin with. You just have to put facts in. The Supreme Court's been quite clear on that. So the motions to dismiss are where that churning and development of theories happens. It just didn't happen here. And I think that that was unfair to the district court. It was unfair to us. It's really put us at a disadvantage in offering the kind of lawful analysis I personally, and the county as an entity, wants to offer this court when faced with these things. Because we were, frankly, surprised when the reply said, no, no, this is as applied. That was the first time that counsel admitted you can search. I think the words were in vain. I want to focus you back on the sufficiency of the complaint. Because I think I heard your response to be, you don't believe it's a sufficient complaint, even in this world of as applied. And what I want to focus in on is reasonable inferences or inferences that can be taken from any version of the complaint with regard to a claim, a free exercise claim. Is it your position that any such inferences cannot be made such that the complaint itself is deficient in its allegation of a free exercise violation? I would not say that inferences can't be drawn. That's pretty clear from the case law. But what I would say here is that this has crossed that sometimes fuzzy line between inferences and just adding stuff in, speculation and so on and so forth. For instance, regarding the person who was in the vaccine efficacy trial. That person was not, as my understanding, was not under a permanent relief from the vaccine requirement. It was a temporary during the vaccine trial, but it would have ended and then the requirement to vaccinate would have come up. That's pure speculation that I don't believe was developed in the complaint. And I definitely think it's beyond the line of inference to say that that person was similarly situated where it's discriminatory to have these different treatment of how vaccines requirements are applied. That just seems like that's really going into the meat of the facts of a complaint rather than inferences about something happened and we can understand some basic background principles or basic background conclusions from what was alleged. This seems like it's often the ether outside the complaint. That's beyond what Trombley did allow. I was not sure if this court had any questions whatsoever regarding the denial of leave to amend without prejudice. If not, we will rest on our brief on that issue. You want to address that in one minute, you may. Specifically with regard to the Illinois RFRA claim. Yes, and the thing there was that it wasn't a denial. It literally had the word denial in it, but it was a denial without prejudice specifically with the opportunity to replete once the motion to dismiss had been ruled on. There was a chance to do it. It wasn't a denial like we often think of where, sorry, I'm not going to hear you. I think that was the most common to come up before this court where the court says, denied with prejudice, you're not going to get a chance. They were given a chance. The court ruled on the motion to dismiss, said absolutely nothing in the motion to dismiss, saying that nothing could be done to amend the complaint to add this theory of state law, which was briefly mentioned in the response to the motion to dismiss, but not developed. So I don't know why the district court would have said anything, even why it would have had reason to say anything on the merits of that when it wasn't even fully churned up, as I've been using that term today. Plaintiffs just decided not to do it. And today they're saying that they felt the court was trying to signal that it didn't want that. To this day, they've pointed to nothing in the rulings or the statements of the district court ever making that supposed frustration manifest. And I think it's eminently reasonable, which is the abuse of discretion standard here, to deny without prejudice leads to amend when there's a motion to dismiss pending. Say, hey, let's do this one step at a time. I'm going to give you a ruling. You can give me one omnibus complaint. Let's do it that way. And the failure to include that claim, then you rest on the plaintiffs versus the court. Correct. And given that they had nothing saying you can't do this, that was their choice, and I think that comes back to the hard waiver I was discussing before for that claim. They chose not to try to raise that claim. They instead narrowed their complaint, and I think the consequences fall on them for doing so. Not on the district court. It's not ever assignable to the district court. Thank you, Mr. Breyer. Thank you so much. Mr. Lubin, we held Mr. Breyer over. We'll give you three minutes for rebuttal. Thank you. Okay, two things real quick. The first one, with respect to the RFRA claim, the court denied the motion to be permitted to amend the complaint and add RFRA, and then in ruling on the motion to dismiss, it dismissed all of the plaintiffs that would have been relevant to that claim other than one who was moving forward on a Title VII claim, and the Title VII claim was only brought because that plaintiff also had a Title VII claim. So there wasn't an opportunity after that to seek leave. The complaint was dismissed with prejudice as to everyone other than that one person. So every defendant in the RFRA claim had been dismissed from the other claims. Is that what you're saying? The plaintiffs had other than the one who moved forward on a Title VII claim. Was that plaintiff who moved forward with the Title VII a defendant in the RFRA claim? A plaintiff. The plaintiff, I'm sorry. Yes. Yeah, it would have been. So why couldn't that plaintiff have added the RFRA claim and just included other plaintiffs? Well, I suppose they could have, but RFRA doesn't get you anything once you're under Title VII. The standard in Title VII is just as deferential as under RFRA. It's the First Amendment claim that would have been bolstered by the RFRA claim. But what would have precluded you from amending the complaint to add the RFRA claim with the Title VII? With respect to that one plaintiff, I suppose nothing. It just doesn't. Under 8A, I could go into 8A. 8A says whatever the facts are, I get whatever law falls under those facts, whether I state it in count one, count two, count three, count four. So I guess I did plead a RFRA claim in effect, but to specifically say count two RFRA claim wouldn't have gotten me anything for that plaintiff that I don't get under Title VII. And that's the answer to that. Moving over to the other question, which is the as-applied versus facial challenge. All of the language in the brief is focused on as-applied. All the language in the brief deals with that as opposed to facial challenge, but it gets really specific on the eighth page. Is it the blue brief or the gray brief? The blue brief, the opening brief. And I'm talking about, in this case, that one employee who was allowed to continue to work despite not vaccinating. Therefore, the policy was not neutrally applied in that secular bases for an exemption were allowed, while religious bases were not. Strict scrutiny should have been applied. So I use the statement applied. I write as or wasn't applied, was as, I suppose it could be as. And then there's just the word neutrally in the middle of it. But there I'm clearly talking about, and the opening brief is clearly talking about the way the policy was applied, which was the focus of the opening brief. I did not use the words as-applied. I did not state this is not a facial challenge, but an as-applied challenge. But I don't have to do that in order to preserve that issue, because the whole argument was about the way the rule was applied, and it wasn't applied in a way that was fair. Are you still pursuing injunctive relief? I don't know that I get anywhere with injunctive relief. I suppose if I was given the opportunity to move forward, I would. But really, no. I don't care so much about injunctive relief at this point. What they want is damages. So are you still pursuing a facial challenge? No. I don't think I have a facial challenge. Other than under DOLF, but you don't have to follow DOLF. Thank you very much, Mr. Lubin. Thank you, Mr. Breyer. The case will be taken under advisement. Thank you, Your Honors.